IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Brandon Ray Rochester, | ) Case No. 8:12-cv-01356-DCN-JDA |
| | ) |
| Plaintiff, | ) **REPORT AND RECOMMENDATION** |
| | ) **OF MAGISTRATE JUDGE** |
| v. | ) |
| | ) |
| Major Neal Urch; Officer Shelton; | ) |
| Officer Fleisher, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 40.] Plaintiff is proceeding pro se and brings this civil rights action pursuant to 42 U.S.C. § 1983. [Doc. 1.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under § 1983 and to submit findings and recommendations to the District Court.

Plaintiff filed this action on May 15, 2012.[1] [Doc. 1.] On October 23, 2012, Defendants Major Neal Urch ("Urch"), Officer Shelton ("Shelton"), and Officer Fleisher ("Fleisher") filed a motion for summary judgment. [Doc. 40.] On October 24, 2012, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 41.] Plaintiff filed a response to

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on May 15, 2012. [Doc. 1 at 3 (Complaint signed by Plaintiff on May 15, 2012).]

Defendants' motion on December 27, 2012. [Doc. 57.] Accordingly, the motion is now ripe for review.

## BACKGROUND

Plaintiff is a pretrial detainee being held at the Spartanburg County Detention Facility ("SCDF"). [Doc. 1 at 2.] Plaintiff alleges he was subjected to cruel and unusual punishment when the toilet in his cell overflowed. [*Id.* at 4–7.] Specifically, Plaintiff alleges he and his cellmate asked for a plunger when their cell toilet stopped up, but Shelton and Fleisher did not provide a plunger. [*Id.* at 4.] Plaintiff alleges that, when the toilet was flushed soon after asking for a plunger, water shot out of the toilet—along with urine, feces, and toilet paper—and sprayed all over the sink, leaving standing water in the cell. [*Id.* at 4–5.] Plaintiff alleges he and his cellmate were not allowed to leave or clean the cell for four to six hours, and when they were let out of the cell, they then had to clean the cell without gloves, were not provided a product to sanitize the sink, and were not allowed to shower after cleaning the cell. [*Id.* at 5–7.] Plaintiff alleges he had sores on his feet from athletes foot and worried he would get an infection from standing in the water from the toilet, and he also alleges he had to hold his bowels for an unhealthy amount of time, was sickened by the smell, was without a source of clean drinking water for an extended period of time, and was traumatized by the ordeal. [*Id.* at 5–6.] Plaintiff seeks $75,000 and a jury trial. [*Id.* at 3.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private

4

behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

6

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION[2]

**Liability Based On a Theory of Supervisory Liability**

Initially, the Court notes Plaintiff failed to allege any action or inaction by Urch. [*See* Doc. 1.] In an abundance of caution, the Court considers the Complaint as stating a claim against Urch under a theory of supervisory liability. Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to

---

[2]Although not raised by Defendants, the Court notes Plaintiff's claims against Defendants in their official capacities must be dismissed. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacities from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims against Defendants in their official capacities, those claims must be dismissed because Defendants are entitled to immunity pursuant to the Eleventh Amendment.

7

> that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.[3]

*Id.* (citations omitted). Plaintiff has failed to allege any facts to demonstrate any personal or supervisory wrongdoing by Urch, and therefore, Urch is entitled to summary judgment.

**Conditions of Confinement Claims**

Plaintiff complains about the conditions of his confinement at SCDF, alleging he was subjected to unsanitary conditions and mental anguish when the toilet in his cell overflowed. [Doc. 1 at 4–7.] Defendants contend Plaintiff and his cellmate caused the toilet to overflow; there was no fecal matter, toilet paper, or smell in the cell; and Plaintiff was provided gloves to clean up the cell, which took approximately fifteen minutes. [Doc. 40-1 at 4–5; *see also* Doc. 40-2 ¶¶ 3–4; Doc. 40-3 ¶¶ 3–4.] Defendants argue Plaintiff has failed to demonstrate any harm or injury resulting from the conditions of his confinement.

---

[3]Stated differently,

> "[A]bsent an allegation that a named defendant has personally subjected the plaintiff to a deprivation of his constitutional rights or has caused the conduct complained of or participated in some manner in the allegedly unlawful actions of his employee or subordinate officer, this Court has held a complaint insufficient to state a claim against such defendant under § 1983."

*Thompson v. McCoy*, 425 F. Supp. 407, 411 (D.S.C. 1976) (quoting *Knipp v. Weikle*, 405 F. Supp. 782 (N.D. Ohio 1975)). A plaintiff's burden to establish a claim based on supervisory liability is a heavy one; in fact, the Supreme Court may have entirely abrogated supervisory liability in *Bivens* actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 693 (2009) (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects."). A *Bivens* action "is the 'federal analog to suits brought against state officials under . . . § 1983.'" *Id.* at 675–76 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 (2006)). Therefore, the Supreme Court's reasoning may extend to abrogate supervisory liability in § 1983 actions as well as *Bivens* actions. *See Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at *2 (D.S.C. June 7, 2010) (noting that, under *Iqbal*, supervisory liability may no longer be a viable § 1983 claim).

[*Id.* at 4–6.] The Court agrees Plaintiff has failed to establish a violation of his constitutional rights with respect to the conditions of his confinement.

Because at all relevant times Plaintiff was a pretrial detainee, his claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment, which is used to evaluate conditions of confinement for those convicted of crimes. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Unlike convicted inmates, pretrial detainees have not been adjudicated guilty of a crime and may not be subjected to any form of "punishment." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). To establish that a condition or restriction of confinement is constitutionally impermissible "punishment," a pretrial detainee must show "either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 538–40 (1979)). Courts may infer that a restriction or condition is not reasonably related to a legitimate governmental objective, and is therefore punishment, if the restriction is arbitrary or purposeless. *Bell*, 441 U.S. at 539. However, while the purpose of pretrial confinement is to ensure the detainee's presence at trial, the detention center may impose restraints on the detainee that are reasonably related to the detention center's interest in maintaining the facility's security, even if the restraints "are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id.* at 539–40.

In any event, "[t]he due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin*, 849 F.2d

at 870. Under the Eighth Amendment, protection against cruel and unusual punishment includes protection against inhumane conditions of imprisonment. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To determine whether a prison official has violated a prisoner's Eighth Amendment rights, a court must analyze "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id.*; *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (discussing Supreme Court decisions in Eighth Amendment cases and noting Eighth Amendment claims consist of objective and subjective components). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

During the time period set forth in the Complaint, Plaintiff was a prisoner in a county detention center, not a guest in a hotel, and it should be expected that conditions in such a setting are often times less than ideal. *See, e.g.*, *id.* at 537 ("[T]he fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'"); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) ("Inmates cannot expect the amenities, conveniences and services of a good hotel."). Further, Plaintiff has failed to allege or demonstrate any serious physical or mental injury resulting from the conditions of which he complains or that there was a significant risk of harm from the challenged conditions. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison,

or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) ("[T]o demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." (citations and internal quotation marks omitted)). Therefore, Plaintiff's allegations about the conditions at SCDF, which are supported only by his bare assertions, are insufficient to raise a genuine issue of fact as to whether any of his constitutional rights were violated. *See Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (holding that changes in conditions of confinement and the denial of privileges are matters that every prisoner can anticipate and are necessarily functions of prison management and must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently).

Moreover, Defendants have averred their actions with respect to dealing with Plaintiff's overflowed cell toilet were in accordance with relevant policies and procedures. [Doc. 40-2 ¶ 6 ("[D]uring the incident on April 21, 2012 . . . I simply followed the SCDF's policies and procedures relating to overflowed toilets."); Doc. 40-3 ¶ 6 ("On the night in question I followed the SCDF's policies and procedures relating to overflowed toilets.").] A prison regulation infringing a prisoner's constitutional rights is valid if the regulation "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). In *Turner*, the United States Supreme Court articulated a four-part test to

determine whether a prison regulation is reasonable,[4] but because Plaintiff does not challenge the validity of SCDF's regulations or allege any injury as a result of the regulations, the Court has no basis for finding the regulations unreasonable. Consequently, Defendants' motion for summary judgment should be granted as to Plaintiff's conditions of confinement claims.

**Deliberate Indifference**

To the extent Plaintiff has stated a claim of deliberate indifference to his medical needs [*see* Doc. 1 at 5, 6 (stating he had sores from athlete's foot that he worried would get infected and that he was not given gloves to clean or allowed to shower after cleaning the cell); Doc. 57 ¶ 9 ("Refusal of Medical Att[en]tion due to fact of being on treatment for an[xie]ty. Panic Attacks.")], Defendants argue Plaintiff has failed to establish his claim because he has failed to show he had a serious medical need and that Defendants exhibited deliberate indifference to that need. [Doc. 40-1 at 6–9.] The Court agrees.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990)

---

[4]The four factors are (1) whether there is a valid, rational connection between the regulation and "the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) how accommodating the asserted constitutional right will impact guards and other prisoners; and (4) whether there are ready alternatives to the regulation. *Turner*, 482 U.S. at 89–91 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)).

("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)). Within the United States Court of Appeals for the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights. *Miltier*, 896 F.2d at 851.

To prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate indifference by the prison officials. *Goodman v. Wexford Health Sources, Inc.*, No. 09-6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)). As the United States Supreme Court has explained,

> Since, we said, only the "'unnecessary *and wanton* infliction of pain'" implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs. "It is *only* such indifference" that can violate the Eighth Amendment; allegations of "inadvertent failure to provide adequate medical care," or of a "negligent . . . diagnos[is]," simply fail to establish the requisite culpable state of mind.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis and alteration in original) (citations omitted). Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975)

(citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817). The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g.*, *Russell*, 528 F.2d at 319.

Here, apart from Plaintiff's bare allegations in his response to Defendants' motion for summary judgment [*see* Doc. 57 ¶ 9], there is no evidence in the record that Plaintiff had a serious medical need to which Defendants were deliberately indifferent. Defendants acknowledge Plaintiff was treated for athlete's foot prior to the toilet overflow incident but aver Plaintiff never complained to SCDF personnel that the incident exacerbated his athlete's foot. [Doc. 40-1 at 9; Doc. 40-2 ¶ 7; Doc. 40-3 ¶ 7.] Further, Plaintiff has failed to present any evidence that he had any serious medical condition or that Defendants denied Plaintiff medical treatment. Therefore, to the extent Plaintiff has stated a claim of deliberate indifference to his serious medical needs, Defendants are entitled to summary judgment because there is no genuine issue of material fact as to such claim.

**Qualified Immunity**

Defendants also argue they are entitled to qualified immunity. [Doc. 40-1 at 3–4.] The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982).  Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right.  *Id.*  Further, qualified immunity is "an immunity from suit rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'"  *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)).  "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken."  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819).  For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual

constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

## **CONCLUSION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>
United States Magistrate Judge

March 29, 2013
Greenville, South Carolina